

August 18, 2015

Via Facsimile at 931-363-8975 and First Class Mail

Mr. Phillip J. Wright
Director of Schools
Giles County Schools
270 Richland Drive
Pulaski, TN 38478

Mr. Wright:

We have been contacted by Rebecca Young and her mother, Gelinda Young, concerning your school district's policy prohibiting students from wearing clothing or accessories with slogans or symbols expressing support for acceptance and fair treatment of lesbian, gay, bisexual, or transgender (LGBT) people (e.g., a t-shirt with the slogan "Some People are Gay, Get Over It" or a clothing bearing any pro-LGBT rights, including the rainbow symbol). On behalf of the American Civil Liberties Union Foundation of Tennessee (ACLU-TN), I'm writing to inform you that any such policy violates important federal Constitutional rights of students and must be rescinded immediately.

The U.S. Supreme Court, as long ago as 1969, ruled that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gates." *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 506 (1969) (upholding rights of high school and middle school students to wear black armbands to exhibit their disapproval of the Vietnam War). As long as it is not obscene and does not constitute a threat of violence, a student's speech may be lawfully censored only if it would substantially disrupt the work of the school or interfere with the rights of others. *Tinker*, 393 U.S. at 513. There is nothing obscene, violent, or disruptive about a student peacefully displaying his or her support for fairness and equality for LGBT people.

On August 5, 2015, Rebecca wore a shirt to Richland High School bearing the slogan "Some People are Gay, Get Over It." At the end of the day, the principal called Rebecca up in front of a cafeteria full of students and publically reprimanded her for wearing the shirt. He told her that she could not wear the shirt or any other shirt referencing LGBT rights to school because it made her a target and provokes other students. Rebecca wore the shirt the entire day without incident.

Later that afternoon, Gelinda Young, called the principal and confirmed that he had forbidden Rebecca from wearing the shirt for the stated reasons. She then called you to discuss this censorship. According to Ms. Young, you approved the principal's actions and stated that the shirt, or any clothing expressing support for LGBT people or LGBT rights violated the schools dress code, which bans material of a sexual nature. You

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION
OF TENNESSEE
P.O. BOX 120160
NASHVILLE, TN 37212
T/ (615) 320-7142
F/ (615) 691-7219
WWW.ACLU-TN.ORG

Case 1:15-cv-00107   Document   Exhibit 1   /15   Page 1 of 3 PageID #: 36

explained to Ms. Young that any clothing bearing such expression, including a rainbow symbol, would not be tolerated.

In *Gillman v. School Board for Holmes County, Florida*, 567 F. Supp. 2d 1359 (N.D. Fla. 2008), the school board banned students from displaying rainbows, pink triangles, and pro-gay slogans such as "Gay Pride," "I Support My Gay Friends," "Pro-Gay Marriage," and "Sexual Orientation is not a choice. Religion, however, is." In striking down the ban, the federal judge ruled that the school board *had* violated the students' right to free speech and had discriminated against their viewpoint in violation of the 1st and 14th Amendments, saying,

> The Holmes County School Board has imposed an outright ban on speech by students that is not vulgar, lewd, obscene, plainly offensive, or violent, but which is pure, political, and expresses tolerance, acceptance, fairness, and support for not only a marginalized group, but more importantly, for a fellow student at [the school].

*Gillman*, 567 F. Supp. 2d at 1370. The court subsequently ordered the district to pay $325,000 for the students' legal fees and expenses.

As in the many similar cases of LGBT-related censorship, school officials in *Gillman* claimed that censorship was necessary to prevent "disruption." Schools often use "disruption" as an excuse for censoring student speech, but it often fails to meet the clear legal standard for what really constitutes disruption. Following the standard articulated in *Tinker* that banned speech must be justified "by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint," the federal judge in *Gillman* rejected this argument. 393 U.S. at 509. The judge noted, in fact, that the "vast majority of episodes involving the speech at issue were indistinguishable from the typical background noise of high school." *Gillman*, 567 F. Supp. 2d at 1373.

In *Tinker*, the school board made a similar argument. The United States Supreme Court in *Tinker* acknowledged that a protest against the Vietnam War in the high school would be extremely politically controversial, especially because a former student at the high school had recently been killed in the war. However, the Court went on to explain why school officials' fear of a disturbance caused by people expressing an unpopular viewpoint was not enough to overcome the right to freedom of expression,

> Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom, or on the campus, that deviates from the views of another person may start an argument or cause a disturbance. But our Constitution says we must take this risk, and our history says that it is this

> sort of hazardous freedom—this kind of openness—that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious, society.

*Tinker*, 393 U.S. at 508-509.

School officials often try to defend themselves against claims of unconstitutional censorship by claiming that LGBT-positive expression is sexually suggestive and conjures images of people engaging in sexual acts. The court in *Gillman* rejected this argument as "an obvious mis-characterization of the speech." 567 F.Supp.2d at 1377. Instead, the court found that the principal had unlawfully banned the students' speech because of his *personal* disagreement with its message. *Gillman*, 567 F. Supp. 2d at 1376.

To comply with the law, you must ensure that your policy permits students to express their support for the respect, equal treatment, and acceptance of LGBT people regardless of the conflicting personal views of faculty, staff, students, or parents.

We ask that you respond in writing within 10 days of the date of this letter confirming that Rebecca will be able to wear clothing expressing her views on LGBT rights or supporting the LGBT community. Please do not hesitate to contact us at the ACLU-TN if you have any questions about the above or if we can be of any assistance to you. I can be reached via e-mail at tcastelli@aclu-tn.org.

Sincerely,

Thomas H. Castelli
Legal Director