UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| REBECCA YOUNG, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 1:15-cv-00107 |
| v. | ) | Judge Sharp |
| GILES COUNTY BOARD OF EDUCATION, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is Plaintiff Rebecca Young's Motion for a Preliminary Injunction (Docket No. 5) ("Motion"). Plaintiff has named as Defendants the Giles County Board of Education, as well as Phillip J. Wright and Micah Landers in their individual and official capacities. Defendants have not responded to Plaintiff's Motion or even entered an appearance in the case. For the reasons set forth below, Plaintiff's Motion will be granted.

**I.     Factual & Procedural Background**

Because Defendants have not yet responded to Plaintiffs' filings, the facts giving rise to the Motion remain entirely undisputed. The Court draws the following from Plaintiff's Verified Complaint (Docket No. 1) and the letters filed in support of Plaintiff's Motion for Preliminary Injunction (Docket Nos. 6-1 & 6-2).

On August 5, 2015, the first day of her senior year at Richland High School, Plaintiff wore a t-shirt that read "Some People Are Gay, Get Over It." The shirt did not cause any disruptions throughout the day.[1] Plaintiff states that "[n]o student or faculty member expressed to or otherwise interacted with Young in a manner manifesting any hostility, disapproval, or

---

[1] Plaintiff has clarified that August 5, 2015 was a condensed school day on which school was released earlier than usual (Docket No. 1 at ¶ 22), although this fact does not affect the outcome.

1

offense to the message on her shirt." (Docket No. 1 at ¶ 24). It was not until the end of the school day that Plaintiff encountered any hostility toward her t-shirt. Even that small measure of opposition came from not from her peers or instructors, but from Defendant Micah Landers, the principal. Defendant Landers summoned Plaintiff to the front of the school cafeteria, which was full of students, and informed her that she could not wear to school either her t-shirt or "any other shirt referencing LGBT rights." Id. at ¶ 26.[2]

Plaintiff's mother followed up with Defendant Landers by phone later that day, at which time he "confirmed that he had forbidden [Plaintiff] from wearing the shirt or any other apparel which bore phrases, symbols, slogans or other indicia of or in support of the LGBT community." Id. at ¶ 27. Defendant Landers's stated reason, as relayed to both Plaintiff and her mother, was that this wholesale ban was necessary to protect Plaintiff from "bullying or harassment." Id. Plaintiff's mother then telephoned Defendant Phillip J. Wright, Director of Schools for Giles County, Tennessee. Defendant Wright said that "pro-LGBT messages are sexual in nature and, therefore, prohibited by the dress code." Id. at ¶ 31. In a letter several weeks later, Defendants again justified the restriction by stating that Plaintiff "would have been bullied or harassed by students" "due to the nature of the shirt's writing and the environment of the school." (Docket No. 6-2).

Defendants' letter also cited the official policies which they asserted provide authorization for their restriction on Plaintiff's dress. One of the policies states that "[i]n order to maintain an atmosphere conducive to learning and to prepare students for working environment [sic], the Giles County School System requires that all students, grades K-12, exercise good taste with regard to their personal appearance. Attire considered disruptive or risky to health or school/personal safety is not appropriate." Id. Another policy provides that "[w]hen a student is

---

[2] The Court uses the common acronym "LGBT" to stand for "Lesbian, Gay, Bisexual, and Transgender."

attired in a manner which is likely to cause disruption or interference with the operation of the school, the principal shall administer appropriate punishment, which may include suspension and/or expulsion." Id. Defendants also expressed that it was their "intent to protect all students interest [sic] but not at the expense of student's [sic] safety and their learning environment." Id.

Plaintiff filed suit in November, bringing claims under 42 U.S.C. § 1983 for violation of her First and Fourteenth Amendment rights. (Docket No. 1). She seeks injunctive relief that would enjoin Defendants from restricting her ability to express her support LGBT rights, including but not limited to the t-shirt worn on August 5, 2015. As noted above, Defendants have not responded to the litigation.

## II. Injunctive Relief

This Court must consider four factors in deciding whether to issue a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable harm without the injunction; (3) whether issuance of the injunction would cause substantial harms to others; and (4) whether the public interest would be served by issuance of the injunction. Bonnell v. Lorenzo, 241 F.3d 800, 809 (6th Cir. 2001). No single factor is a prerequisite to the issuance of a preliminary injunction; rather the Court must balance all four factors. Neveux v. Webcraft Tech., Inc., 921 F. Supp. 1568, 1570-71 (E.D. Mich. 1996) (citing Performance Unlimited v. Questar Publishers, Inc., 52 F.3d 1373, 1381 (6th Cir. 1995)). Before a preliminary injunction may issue, however, a plaintiff must always demonstrate some irreparable injury that necessitates the injunction. Id. at 1571 (quoting Friendship Materials, Inc. v. Mich. Brick, Inc., 679 F.2d 100, 104 (6th Cir. 1982)).

*A. Likelihood of Success on the Merits*

Plaintiff brings suit to stop her school from censoring her expression of her views on a topic of undeniable political importance. The legal ground covering such issues is so well-trod that the Court finds itself surprised at the need to journey down this path. Nevertheless, the Court draws upon analogous precedent to reach the conclusion that Plaintiff will likely succeed on the merits of her claims.

A First Amendment problem arises when students in a public school, in the exercise of their First Amendment rights, collide with the rules and policies of school officials. Tinker v. Des Moines, 393 U.S. 503, 507 (1969). The Supreme Court has emphatically stated on a number of occasions "that students do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" Morse v. Frederick, 551 U.S. 393 (2007) (quoting Tinker, 393 U.S. at 506). Still, "the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 682 (1986). Courts must apply the rights of students "in light of the special characteristics of the school environment." Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 266 (1988) (quoting Tinker, 393 U.S. at 506).

Schools need not tolerate student speech deemed inconsistent with the educational mission even if similar speech might be protected outside the school setting. Id. Yet neither may schools punish "silent, passive expression of opinion, unaccompanied by any disorder or disturbance" attributable to such expression, and "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." Tinker, 393 U.S. at 508. In Tinker, the Supreme Court articulated a test for the regulation of student speech on issues of political importance, placing the burden of proof firmly on the shoulders of the school:

> In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Certainly where there is no finding and no showing that engaging in the forbidden conduct would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school,' the prohibition cannot be sustained.

Id. at 509. With this test in mind, the Court directs its attention to the regulation of student speech at issue here.

Student expression on LGBT issues is speech on a purely political topic, which falls clearly within the ambit of the First Amendment's protection. See Gilman v. Sch. Bd. for Holmes Cty., Fla., 567 F. Supp. 2d 1359 (N.D. Fla. 2008) (invalidating school ban on wearing or displaying symbols or slogans advancing the fair treatment of homosexual people); Castorina v. Madison Cty. Sch. Bd., 246 F.3d 356, 539-40 (6th Cir. 2001) (setting forth when the Tinker test governs school speech).[3] Therefore, our inquiry in this case is whether the ban on apparel that references LGBT issues "is necessary to avoid material and substantial interference with schoolwork or discipline." Tinker, 393 U.S. at 511. Based on the evidence now before the Court, it is not.

Plaintiff wore her shirt without any disruption on August 5, 2015. The only disruption came at the hands of Defendants themselves, when Principal Landers addressed Plaintiff in the cafeteria. Apart from this indelicate approach to a sensitive topic, Plaintiff's shirt does not even seem to have been a blip on others' radar. Moreover, Defendants have not provided anything

---

[3] See also Chambers v. Babbitt, 145 F. Supp. 2d 1068 (D. Minn. 2001) (rejecting school board ban on a t-shirt with the message "Straight Pride," notwithstanding evidence of "gay-bashing" speech and vandalism of a student's car who was perceived to be homosexual); Henkle v. Gregory, 150 F. Supp. 2d 1067 (D. Nev. 2001) (holding that student stated a claim for violation of his First Amendment right to speech when he alleged that school officials prevented him from openly stating that he was homosexual and retaliated against him for doing so); Fricke v. Lynch, 491 F. Supp. 381 (D.R.I. 1980) (holding that public school violated homosexual student's First Amendment right to speech and expression when it banned him from bringing a same-sex date to the prom, notwithstanding that the student and another homosexual student had previously been assaulted by other students and that the school was forced to provide additional security and escorts).

other than conclusory statements to support their seemingly unfounded theory that speech on LGBT rights will disrupt the school environment. Merely invoking the word "disruption" falls far short of the showing that Tinker requires. Indeed, Plaintiff's uneventful day in her t-shirt, coupled with Defendants utter failure to participate in the litigation, virtually cements the Court's conclusion that the ban on LGBT-speech is not necessary to prevent a material and substantial disruption of the school environment.

The Court also notes that the ban at issue here is particularly problematic insofar as Defendants verbally prohibited only those messages *supporting* the LGBT community. (Docket No. 1 at ¶¶ 27, 30). Silencing only one side of the conversation constitutes a viewpoint-specific restriction, an egregious violation of the First Amendment. See, e.g., Rosenberger v. Rector and Visitors of the Univ. of Va., 515 U.S. 819, 828-29 (1995) ("Discrimination against speech because of its message is presumed to be unconstitutional"), R.A.V. v. St. Paul, 505 U.S. 377, 391-92 (1992) (striking down a Minnesota hate-speech statute on the basis of impermissible viewpoint discrimination).

Because Defendants have regulated student speech on a matter of political importance without making any showing whatsoever regarding their stated fear of the speech disrupting the school environment, the ban on speech in support of the LGBT community fails to pass constitutional muster. Plaintiff is likely to succeed on the merits of her claims.

  *B. Irreparable Harm*

To obtain a preliminary injunction, the harm must be "both certain and immediate, rather than speculative or theoretical." Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 154 (6th Cir. 1991). Under case law applicable to free speech claims, "the loss of First Amendment freedoms, for even minimal periods of time," is presumed to constitute

irreparable harm. Elrod v. Burns, 427 U.S. 347, 373 (1976). Here, Defendants' ban on Plaintiff's t-shirt and other speech regarding LGBT issues has suppressed Plaintiff's rights under the First Amendment for over four months. The harm is neither speculative nor theoretical—it is actual and ongoing.

  C. *Harm to Others & the Public Interest*

  The remaining two factors—the potential for harm to others should the injunctive be granted and the public interest—also weigh in favor of granting injunctive relief. The harm to Plaintiff "should the preliminary injunction not be issued must be weighed against the harm to others from the granting of the injunction." See United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth., 163 F.3d 341, 363 (6th Cir. 1998). Nothing on the record indicates that granting the requested injunctive relief will harm others. To the contrary, granting an injunction will vindicate the First Amendment rights of other students who are also currently subject to Defendants' censorship. Moreover, because Defendants have failed to present any evidence regarding the disruptive nature of LGBT-related expression, there is little reason to believe that granting the injunction would harm other students by negatively affecting their education.

  Finally, "it is always in the public interest to prevent violation of a party's constitutional rights." Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tenn., 274 F.3d 377, 400 (6th Cir. 2001) (internal quotation marks omitted). Because Plaintiff has established a strong likelihood that Defendants' prohibition of speech violates the First Amendment, the public interest also favors the issuance of a preliminary injunction.

## Conclusion

Having considered the relevant preliminary injunction factors, the Court finds that they weigh in favor of issuance of a preliminary injunction. Plaintiff's Motion for a Preliminary Injunction (Docket No. 5) is hereby GRANTED. The specific terms of the injunction are set forth in the attached Order.

It is SO ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE