IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| REBECCA YOUNG, | ) | |
| | ) | |
|   Plaintiff, | ) | |
| | ) | No.: 1:15-cv-00107 |
| v. | ) | CHIEF JUDGE SHARP |
| | ) | JURY DEMAND |
| GILES COUNTY BOARD OF | ) | |
| EDUCATION, PHILLIP J. WRIGHT | ) | |
| In his individual and official capacity | ) | |
| As Director of Schools for Giles County, | ) | |
| Tennessee, and MICAH LANDERS, in | ) | |
| His individual and official capacity as | ) | |
| Principal of Richland High School, | ) | |
| | ) | |
|   Defendants. | ) | |

**MEMORANDUM OF LAW ON BEHALF OF DEFENDANTS IN SUPPORT OF MOTION FOR RELIEF FROM ORDER PURSUANT TO RULE 60**

Defendants, Giles County Board of Education ("BOE"), Phillip J. Wright, in his individual and official capacity as Director of Schools for Giles County, Tennessee ("Mr. Wright"), and Micah Landers, in his individual and official capacity as Principal of Richland High School ("Mr. Landers") (collectively "Defendants"), by and through counsel, hereby submit this memorandum of law in support of their motion for relief from the December 22, 2015 Order (Docket Entry No. 12) granting the plaintiff's motion for a preliminary injunction (Docket Entry No. 5).

### I.    LAW AND ARGUMENT

Fed. R. Civ. P. 60(b)(1) states:

> On motion and just terms, the court may relieve a party or its legal representative from a[n] . . . order . . . for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect . . . .

Fed. R. Civ. P. 60(b)(1). The burden "is on the movant to set forth, in a motion or petition and supporting affidavits, facts explaining why the movant was justified in failing to avoid the mistake, inadvertence, surprise or neglect." Tennessee State Bank v. Lay, 609 S.W.2d 525 (Tenn. Ct. App. 1980).

In this case, Defendants seek relief from the Court's order based upon mistake/excusable neglect. As detailed in the Affidavit of Robyn Beale Williams, defense counsel had spoken with her clients and believed that their deadline to respond to the Complaint and Motion was December 22, 2015. Defense counsel met with the defendants and was in the process of gathering information responsive to the Motion and Complaint; however, no appearance was entered, as a conflict check had not been completed. Additionally, due to the timing in this case, important witnesses were out for the school's holiday break. Defense counsel contacted Plaintiff's counsel to request an extension to file a responsive pleading, to which counsel agreed. However, before a motion for extension was filed, the Court entered an order granting the preliminary injunction.

Defendants are in possession of information from Ms. Young's school that will demonstrate why the school district's position is justified. Defendants expect to obtain additional information that played a role in formulating the school's dress code policy, from other schools within the district. Defendants respectfully request an opportunity to present this evidence for consideration by the Court before a decision on an injunction is made. Defendants have acted in the good faith belief that their deadline to respond to Plaintiff's Motion was December 31. Defendants suggest that there will be no prejudice to Plaintiff if Defendants' motion is granted and Defendants be permitted to present their evidence on the Motion.

A motion under Fed. R. Civ. P. 60(b) is intended to provide relief to a party in two instances: (1) when a party or its attorney has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order.  Cacevic v. City of Hazel Park, 226 F.3d 483, 490 (6th Cir. 2000).  Relief under Rule 60(b) is "circumscribed by public policy favoring finality of judgments and termination of litigation."  Green v. BP Products of North America, Inc., 169 Fed. Appx. 951, 960 (6th Cir. 2006).

Three factors are relevant to determine whether Rule 60(b)(1) relief is appropriate: "'(1) whether the party seeking relief is culpable; (2) whether the party opposing relief will be prejudiced; and (3) whether the party seeking relief has a meritorious claim or defense.'"  In re Gibson and Epps. L.L.C., 468 B.R. 279, 290 (E.D. Tenn. 2012) (citing, Williams v. Meyer, 346 F.3d 607, 613 (6th Cir. 2003)), quoting, United Coin Meter v. Seaboard Coastline R.R., 705 F.2d 839, 844-45 (6th Cir. 1983).  Only when a party can demonstrate that it lacks culpability due to mistake, inadvertence, surprise, or excusable neglect does the court look to the other two factors.  United States v. Reyes, 307 F.3d 451, 456 (6th Cir. 2002).  "A party's conduct is culpable if it 'display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings.'"  Williams, 346 F.3d at 613, quoting, Amernational Indus. V. Action-Tungsram, Inc., 925 F.2d 970, 978 (6th Cir. 1991).

1. **The Party Seeking Relief is Not Culpable.**

Defendants respectfully submit that there is no culpability in this matter.  Never did the defendants intend to thwart judicial proceedings, nor did the defendants or defense counsel recklessly disregard the proceedings.  Cf., Reyes, 307 F.3d at 456-57.

On the contrary, Defendants and their counsel moved forward as expeditiously as possible with investigating the matter, gathering evidence, securing an extension from defense counsel and preparing a response to the plaintiff's Motion, while waiting for a conflict check to clear and attempting to reach witnesses who were absent due to the holidays. Defendants lack culpability in this matter, and the court should therefore look to the other two factors.

    **2.**     <u>**Plaintiff Will Not Be Prejudiced**</u>.

Setting aside the Order will not cause prejudice to the plaintiff. "Mere delay, or the fact that a party has already incurred costs in the prosecution or defense of an action does not constitute prejudice." <u>Sizemore v. United Physicians Ins. Risk Retention Group</u>, 56 S.W.3d 557, 568 (Tenn. Ct. App. 2001). Prejudice "connotes unmerited, substantive harm to the opposing litigant." <u>Id.</u> Any delay resulting from granting this motion will be insignificant, and is not the type or length of delay that the case law contemplates. <u>See</u>, <u>Ferguson v. Brown</u>, 291 S.W.3d 381 (Tenn. Ct. App. 2009) (finding that a "slight delay, a matter of a few weeks" was not significant).

    **3.**     <u>**Defendants Have a Meritorious Defense**</u>.

Third, the defendants have a meritorious defense, discussed below. With a few important exceptions, the Parties largely agree upon the facts. Plaintiff, Rebecca Young, is an eighteen year-old high school senior at Richland High School. (Docket Entry No. 1, Complaint ¶ 1). Richland High School is part of the Giles County school system, governed by the Giles County Board of Education. (Docket Entry No. 1, Comp. ¶ 13). Micah Landers is the Principal of Richland High School. (See attached Affidavit of Micah Landers ¶ 1). Phillip Wright is the Director of Schools for Giles County. (See attached Affidavit of Phillip Wright ¶ 1).

On August 5, 2015, the first day of the 2015-2016 school year, Ms. Young wore a t-shirt to school that displayed the words "Some People Are Gay. Get Over It." written in rainbow colors. (Docket Entry No. 1, Comp. ¶ 21; Landers Affid. ¶ 2). Two teachers advised Mr. Landers about Ms. Young's t-shirt, but Mr. Landers did not see it personally until lunch time, which occurred immediately before dismissal as the first day of school was a half day. (Landers Affid. ¶ 3). As students were exiting the cafeteria, Mr. Landers discreetly guided Ms. Young to the side and asked her whether she felt like her t-shirt might be inappropriate. (Landers Affid. ¶ 4). Ms. Young replied that it was not. (Landers Affid. ¶ 5). Mr. Landers told her he thought it was inappropriate and asked her to consider how it would make her feel if someone wore a shirt to school that said "I Hate Gays. Deal With It." (Landers Affid. ¶ 6). Ms. Young laughed and stated it would not offend her. (Landers Affid. ¶ 7). Mr. Landers responded that he thought she would indeed be upset, and that her mother would be upset as well. (Landers Affid. ¶ 8). He further explained to Ms. Young that the slogan on her t-shirt could cause some students to make hurtful or harassing comments and to start trouble. (Landers Affid. ¶ 9). The conversation never got louder than a whisper. (Landers Affid. ¶ 10). It is not accurate to say that Mr. Landers "publically reprimanded" Ms. Young, or even that he "reprimanded" her at all. (Landers Affid. ¶ 11). It was a respectful conversation between two adults. (Landers Affid. ¶ 12). At the conclusion of the conversation, Mr. Landers could see that while Ms. Young did not necessarily agree with him about the t-shirt, she did have some idea of why it was not appropriate. (Landers Affid. ¶ 13). In speaking with Ms. Young, Mr. Landers made clear to her that his motivation was to ensure that she not become a target for bullying or harassment. (Landers Affid. ¶ 14). Ms. Young was never punished or disciplined in any way for wearing the shirt. (Landers Affid. ¶

14).

Later in the day on August 5, 2015, Ms. Young's mother telephoned Mr. Landers. (Landers Affid. ¶ 15). Mrs. Young accused Mr. Landers of violating her daughter's right to free speech and threatened him with legal recourse and media exposure. (Landers Affid. ¶ 16). Mr. Landers explained to Mrs. Young that he truly did have Rebecca's best interests at heart as he did not wish to see her again become a target for bullying. (Landers Affid. ¶ 17). He told Mrs. Young that it is his goal to preserve a safe, calm and non-disruptive environment for all students. (Landers Affid. ¶ 18).

Mrs. Young also telephoned Director of Schools Mr. Wright, who advised her that he concurred with Mr. Landers. (Wright Affid. ¶ 2). The dress code in question prohibits clothing and accessories bearing slogans that prove to be a disturbing influence. (Wright Affid. ¶ 3, Exh. A).

Unfortunately, Ms. Young has been the victim of bullying on prior occasions. (Landers Affid. ¶ 19). In the spring of 2015, Ms. Young reported to school staff that several boys, who had been following behind her in the hall as they changed classes, had made offensive remarks to her about her sexuality. (Landers Affid. ¶ 20). The prior October, Ms. Young and two other students went to the school guidance counselor to report concern about a rumor being spread by other students. (Landers Affid. ¶ 21). Specifically, unknown students were spreading a rumor that Ms. Young was sleeping with another student, a 14 year-old female. (Landers Affid. ¶ 22). Ms. Young was upset and concerned about the rumor. (Landers Affid. ¶ 23).

The issues involving Ms. Young did not begin in 2015, however. There have been periodic incidents where she has been victimized, going as far back as 2012. (Landers Affid. ¶ 24). In January 2012, Ms. Young's mother telephoned the school to report that

Rebecca had cried all night and had a swollen face because of comments that had been made by two other students. (Landers Affid. ¶ 25). The comments were alleged to have begun on Friday, after the students left the office of Assistant Principal Mrs. Casey, who was addressing the incident, and they continued on Monday. (Landers Affid. ¶ 26). Mrs. Young reported that Rebecca wanted to harm herself and others as a result of the comments. (Landers Affid. ¶ 27). She also stated that when other teens stay at her house, she has witnessed them crying because of their own parents. (Landers Affid. ¶ 28). School staff members spoke with one of the students allegedly involved in the incident that caused Rebecca to be so upset. (Landers Affid. ¶ 29). The student reported that Rebecca and some other students were discussing the subject of gays, when some in the group commented that the Bible says that the gay life is wrong. (Landers Affid. ¶ 30).

Based upon Ms. Young and her mother's expressions of concern about Rebecca being bullied because of her sexuality, school personnel actually developed a "bullying protocol" to provide a frame work for school personnel to respond when a bullying event occurs, and to assure Mrs. Young that Rebecca was safe in school and that her tormentors were being handled appropriately. (Landers Affid. ¶ 31; Exh. A). Mrs. Young even requested, and was permitted, to review the "bullying protocol" and both she and Rebecca signed off on it. (See Landers Affid. ¶ 32; Exh. A).

Regrettably, the incidents have not stopped as Rebecca progressed through high school. (Landers Affid. ¶ 33). Since the beginning of the school year (and before this lawsuit was filed), Ms. Young and her mother have made three (3) complaints to school personnel, resulting in four (4) separate discussions to attempt to quell their concerns about how Rebecca is being treated. (Landers Affid. ¶ 34). In May 2015 Rebecca

reported to staff that some freshman boys were calling her and her girlfriend derogatory names. (Landers Affid. ¶ 35). Rebecca provided the names of five (5) boys who were involved. (Landers Affid. ¶ 36). When interviewed, at least one of them stated he was "disgusted" by Ms. Young because he had to watch her kissing her girlfriend in the hallway. (Landers Affid. ¶ 37). On or about October 29, 2015, Mrs. Young contacted Rebecca's teacher, Stephanie Langford, through a Facebook message to report that Rebecca was upset because she felt that the HOSA (Health Occupations Students of America) officers do not want to cooperate or even participate with her because they "do not agree with her lifestyle choices." (Landers Affid. ¶ 38). Mrs. Young stated that "derogatory issues" have been raised and that other students have made "hurtful and mean spirited" remarks. (Landers Affid. ¶ 39). Mrs. Young requested that Rebecca sit down with staff "to resolve the issue." (Landers Affid. ¶ 40).

The very next day, on October 30, 2015, an upset Rebecca went to Ms. Langford to report that she was having "issues" with the other officer team. (Landers Affid. ¶ 41). She stated she was upset that they did not agree with her choice of t-shirt for the HOSA group. (Landers Affid. ¶ 41). It was decided that they would all sit down together and let her voice her feelings. (Landers Affid. ¶ 41). On November 3, 2015, the team sat down to discuss Rebecca's concerns. (Landers Affid. ¶ 42). At that time, the officers were warned against making any derogatory comments toward one another. (Landers Affid. ¶ 43).

The parties agree upon the factors for deciding whether to issue a preliminary injunction.

### a. Likelihood of Success on the Merits

Where the parties disagree is on the issue of whether a constitutionally valid

reason exists to regulate the speech at issue. As stated in the seminal case of <u>Tinker v. Des Moines Indep. Comm. Sch. Dist.</u>, 393 U.S. 503 (1969), where facts exist which might reasonably lead school authorities to forecast substantial disruption of or material interference with school activities, no unconstitutional denial of a student's right of expression and opinion exists. <u>Id.</u> at 514. Defendants respectfully suggest that the concerns voiced to Ms. Young by school personnel on the day in question were legitimate and sufficient to justify the request that she cease wearing the t-shirt in question, or any similar apparel.

As detailed extensively above, Ms. Young has by her own admission and that of her mother been the victim of bullying, harassment, "derogatory issues", "hateful and mean-spirited remarks", and pronouncements out loud that God says her lifestyle is wrong. Ms. Young and her mother have reported these complaints to school personnel on many occasions. These complaints have been registered as far back as 2012, and as recently as November 2015. The bullying incidents have been so bad that the school found it necessary to develop a "bullying protocol" to protect Ms. Young and document the bullying incidents. They have been so serious that Ms. Young was brought to the point of crying all night, waking up with a swollen face and expressing a desire to harm herself and to harm others. These facts are hardly an unfounded theory; they are precisely the kind of facts to which <u>Tinker</u> refers as "substantial disruption of" and "material interference with" school activities.

Plaintiff repeatedly focuses on the fact that there were no disturbances on the day she wore the shirt, which was the first day of school and 1/2 day. While that is true, it is not an accurate reflection of the disruption and interference that has occurred and is likely to reoccur, as demonstrated by the lengthy history of bullying against Ms. Young.

Further, the fact that no disturbance actually occurred on the day in question is not the test for whether a prohibition of speech is valid. The Sixth Circuit recently addressed this argument in <u>Defoe ex rel. Defoe v. Spiva</u>, 625 F.3d 324 (6th Cir. 2010), a case involving display of the confederate flag on a t-shirt.

> Plaintiffs argue that the Confederate flag itself has not caused any disruption in the past at [the school] that would justify the ban. However, as this Court stated in <u>Barr</u>, such an argument "misapplies the <u>Tinker</u> standard" because "<u>Tinker</u> does not require disruption to have actually occurred." 538 F.3d at 565 (quoting <u>Lowery v. Euverard</u>, 497 F.3d 584, 591, 593 (6th Cir. 2007) (internal quotation marks omitted). Instead, the Court evaluates the circumstances to determine whether the school's forecast of substantial disruption was reasonable. <u>Id.</u>

Under <u>Tinker</u>, "to justify prohibition of a particular expression of opinion," a school district must be able to show only "that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint," but rather, "that the school authorities had reason to anticipate that the wearing of [the banned imagery] would substantially interfere with the work of the school or would impinge upon the rights of other students," including the right "to be secure and to be let alone." <u>Defoe</u>, 625 F.3d at 333-34 (<u>citing</u>, <u>Brogdon v. Lafon</u>, 217 Fed. Appx. 518, 525 (6th Cir. 2007) (citations omitted)).

Defendants suggest the evidence in this case makes clear that the school district was justified in regulating the speech at issue. Moreover, there is <u>no</u> evidence that the regulation is viewpoint based and that the defendants have prohibited only messages supporting the LGBT community. On the contrary, Defendants would have approached this situation in exactly the same way if Ms. Young were being abused for being heterosexual and her shirt had stated "Some People Are Straight. Get Over It," given the circumstances and severity of what Ms. Young has endured. Accordingly, the

defendants are substantially likely to prevail on the merits.

      **b.**    **Irreparable Harm**

Given that the defendants' regulation of speech in this case was justified, the irreparable harm is mitigated in this instance.

      **c.**    **Harm to Others and the Public Interest**

Defendants have demonstrated the disruption that has already occurred, and that is likely to continue, if the requested relief is granted. Not only has Ms. Young's educational experience been completely interfered with and disrupted, but that of others as well, as investigation after investigation has had to be conducted to address the bullying and terrorizing that has driven Ms. Young to convey thoughts of suicide and harm to others. The public has a paramount interest in ensuring that our children are safe in school and expects school personnel to do everything possible to make that happen, just as Mrs. Young expected them to do everything possible to keep Rebecca safe when she repeatedly reported the harassment that her daughter was enduring.

Thus, the Defendants meet all three factors that the Sixth Circuit has deemed relevant to determine whether Rule 60(b)(1) relief is appropriate: lack of culpability, lack of prejudice to the Plaintiff, and a meritorious defense. The mistake in this case occurred due to a confluence of factors including human error by misunderstanding, and timing with respect to a major holiday and school break. Defendants suggest these were not reasonably within their control. There was no bad faith on Defendants' part in failing to file an Answer to the Motion. Defense counsel had met with her clients, obtained an extension from counsel, and had opposition papers substantially prepared. Unfortunately, for the reasons stated above, counsel was simply unable to file the documents before the Court issued its Order. Accordingly, Defendants respectfully

suggest that granting their motion to set aside the order is proper.

## II. **CONCLUSION**

Based upon the foregoing, Defendants Giles County Board of Education, Phillip J. Wright and Micah Landers respectfully request that the Court grant their motion, set aside the December 22, 2015 Order granting the plaintiff's Motion for Preliminary Injunction, and deny the Motion for a Preliminary Injunction.

Respectfully submitted,

*/s/Robyn Beale Williams*
Robyn Beale Williams, BPR #19736
**FARRAR & BATES, LLP**
211 Seventh Avenue North, Suite 500
Nashville, Tennessee 37219
(615) 254-3060
(615) 254-9835 Fax
robyn.williams@farrar-bates.com
*Counsel for Giles County Board of Education, Phillip J. Wright, in his individual and official capacity as Director of Schools for Giles County, Tennessee, and Micah Landers, in his individual and official capacity as Principal of Richland High School*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 5th day of January 2016, a true and correct copy of the foregoing has been forwarded via the U.S. District Court's electronic notification system to:

Mark J. Downton
THE LAW OFFICE OF MARK J. DOWNTON
5654 Amalie Drive
Nashville, TN 37211
lawyerdownton@gmail.com
*Counsel for Rebecca Young*

Thomas H. Castelli
ACLU (NASHVILLE OFFICE)
P O Box 120160
Nashville, TN 37212
tcastelli@aclu-tn.org
*Counsel for Rebecca Young*

                                                */s/ Robyn Beale Williams*
                                                Robyn Beale Williams

{FB395303 / LGPC 5371 }

Case 1:15-cv-00107   Document 16   Filed 01/05/16   Page 13 of 13 PageID #: 106