IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| REBECCA YOUNG, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | No.: 1:15-cv-00107 |
| v. ) | CHIEF JUDGE SHARP |
| ) | JURY DEMAND |
| GILES COUNTY BOARD OF ) | |
| EDUCATION, PHILLIP J. WRIGHT ) | |
| In his individual and official capacity ) | |
| As Director of Schools for Giles County, ) | |
| Tennessee, and MICAH LANDERS, in ) | |
| His individual and official capacity as ) | |
| Principal of Richland High School, ) | |
| ) | |
|    Defendants. ) | |

## AFFIDAVIT OF MICAH LANDERS

The undersigned, Micah Landers, after being duly sworn according to law, states:

1. I am the Principal at Richland High School in Giles County, Tennessee and I am over the age of 18 years. I have personal knowledge of the facts stated herein, and I am competent to testify about those facts.

2. On August 5, 2015, the first day of the 2015-2016 school year, Ms. Young wore a t-shirt to school that displayed the words "Some People Are Gay. Get Over It." written in rainbow colors.

3. Two teachers advised me about Ms. Young's t-shirt, but I did not see it personally until lunch time, which occurred immediately before dismissal as the first day of school was a half day.

4. As students were exiting the cafeteria, I discreetly guided Ms. Young to the side and asked her whether she felt like her t-shirt might be inappropriate.

{FB394375 / LGPC 5371 }

Case 1:15-cv-00107   Document 18   Filed 01/05/16   Page 1 of 7 PageID #: 111

5. Ms. Young replied that it was not.

6. I told her I thought it was inappropriate and asked her to consider how it would make her feel if someone wore a shirt to school that said "I Hate Gays. Deal With It."

7. Ms. Young laughed and stated it would not offend her.

8. I responded that I thought she would indeed be upset, and that her mother would be upset as well.

9. I further explained to Ms. Young that the slogan on her t-shirt could cause some students to make hurtful or harassing comments and to start trouble.

10. The conversation never got louder than a whisper.

11. It is not accurate to say that I "publically reprimanded" Ms. Young, or even that I "reprimanded" her at all.

12. It was a respectful conversation between two adults.

13. At the conclusion of the conversation, I could see that while Ms. Young did not necessarily agree with me about the t-shirt, she did have some idea of why it was not appropriate.

14. In speaking with Ms. Young, I made clear to her that my motivation was to ensure that she not become a target for bullying or harassment. Ms. Young was never punished or disciplined in any way for wearing the shirt.

15. Later in the day on August 5, 2015, Ms. Young's mother telephoned me.

16. Mrs. Young accused me of violating her daughter's right to free speech and threatened me with legal recourse and media exposure.

17. I explained to Mrs. Young that I truly did have Rebecca's best interests at heart as I did not wish to see her become a target for bullying.

18. I told Mrs. Young that it is my goal to preserve a safe, calm and non-disruptive environment for all students.

19. Unfortunately, Ms. Young has been the victim of bullying on prior occasions.

20. In the spring of 2015, Ms. Young reported to school staff that several boys, who had been following behind her in the hall as they changed classes, had made offensive remarks to her about her sexuality.

21. The prior October, Ms. Young and two other students went to the school guidance counselor to report concern about a rumor being spread by other students.

22. Specifically, unknown students were spreading a rumor that Ms. Young was sleeping with another student, a 14 year-old female.

23. Ms. Young was upset and concerned about the rumor.

24. The issues involving Ms. Young did not begin in 2015, however. There have been periodic incidents where she has been victimized, going as far back as 2012.

25. In January 2012, Ms. Young's mother telephoned the school to report that Rebecca had cried all night and had a swollen face because of comments that had been made by two other students.

26. The comments were alleged to have begun on Friday, after the students left the office of Assistant Principal Mrs. Casey, who was addressing the situation, and they continued on Monday.

27. Mrs. Young reported that Rebecca wanted to harm herself and others.

28. She also stated that when other teens stay at her house, she has witnessed them crying because of their own parents.

{FB394375 / LGPC 5371 }
Case 1:15-cv-00107   Document 18   Filed 01/05/16   Page 3 of 7 PageID #: 113

29. School staff members spoke with one of the students allegedly involved in the incident that caused Rebecca to be so upset.

30. The student reported that Rebecca and some other students were discussing the subject of gays, when some in the group commented that the Bible says that gay life is wrong.

31. Based upon Ms. Young and her mother's expressions of concern about Rebecca being bullied because of her sexuality, school personnel actually developed a "bullying protocol" to provide a frame work for school personnel to respond when a bullying event occurs, and to assure Mrs. Young that Rebecca was safe in school and that her tormentors were being handled appropriately.

32. Mrs. Young even requested, and was permitted, to review the "bullying protocol" and both she and Rebecca signed off on it. (See **Exhibit A** attached hereto).

33. Regrettably, the incidents have not stopped as Rebecca progressed through high school.

34. Since the beginning of the school year (and before this lawsuit was filed), Ms. Young and her mother have made three (3) complaints to school personnel, resulting in four (4) separate discussions to attempt to quell their concerns about how Rebecca is being treated.

35. In May 2015, Rebecca reported to staff that some freshman boys were calling her and her girlfriend derogatory names.

36. Rebecca provided the names of five (5) boys who were involved.

37. When interviewed, at least one of them stated he was "disgusted" by Ms. Young because he had to watch her kissing her girlfriend in the hallway.

38. On or about October 29, 2015, Mrs. Young contacted Rebecca's teacher, Stephanie Langford, through a Facebook message to report that Rebecca was upset because she felt that the HOSA (Health Occupations Students of America) officers do not want to cooperate or even participate with her because they "do not agree with her lifestyle choices."

39. Mrs. Young stated that "derogatory issues" have been raised and that other students have made "hurtful and mean spirited" remarks.

40. Mrs. Young requested that Rebecca sit down with staff "to resolve the issue."

41. The very next day, on October 30, 2015, an upset Rebecca went to Ms. Langford to report that she was having "issues" with the other officer team. She stated she was upset that they did not agree with her choice of t-shirt for the HOSA group. It was decided that they would all sit down together and let her voice her feelings.

42. On November 3, 2015, the team sat down to discuss Rebecca's concerns.

43. At that time, the officers were warned against making any derogatory comments toward one another.

Further affiant sayeth not.

_____
Micah Landers

STATE OF TENNESSEE )
COUNTY OF DAVIDSON )

Subscribed and sworn to before me this 4th day of January, 2016.

_____
Notary Public — Rose Yvonne Brown

My commission expires: 01-24-2017

{FB394375 / LGPC 5371 }

Respectfully submitted,

*/s/Robyn Beale Williams*
Robyn Beale Williams, BPR #19736
**FARRAR & BATES, LLP**
211 Seventh Avenue North, Suite 500
Nashville, Tennessee 37219
(615) 254-3060
(615) 254-9835 Fax
robyn.williams@farrar-bates.com
*Counsel for Giles County Board of Education, Phillip J. Wright, in his individual and official capacity as Director of Schools for Giles County, Tennessee, and Micah Landers, in his individual and official capacity as Principal of Richland High School*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 5th day of January 2016, a true and correct copy of the foregoing has been forwarded via the U.S. District Court's electronic notification system to:

Mark J. Downton
THE LAW OFFICE OF MARK J. DOWNTON
5654 Amalie Drive
Nashville, TN 37211
lawyerdownton@gmail.com
*Counsel for Rebecca Young*

Thomas H. Castelli
ACLU (NASHVILLE OFFICE)
P O Box 120160
Nashville, TN 37212
tcastelli@aclu-tn.org
*Counsel for Rebecca Young*

*/s/ Robyn Beale Williams*
Robyn Beale Williams